UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ACCO BRANDS USA LLC d/b/a<br>KENSINGTON TECHNOLOGY GROUP,<br><br>　　　　Plaintiff,<br><br>　　　　　v.<br><br>PC GUARDIAN ANTI-THEFT<br>PRODUCTS, INC., ET AL.<br><br>　　　　Defendants. | No. 06 C 7102<br>Judge James B. Zagel |

### MEMORANDUM OPINION AND ORDER

Plaintiff ACCO Brands USA, LLC ("ACCO") has accused Defendant PC Guardian Anti-Theft Products, Inc. ("PCG"), as well as others, of infringing U.S. Patent Nos. 7,100,403 ("the '403 Patent") and 7,122,125 ("the '125 Patent"), both of which are directed to security locks for notebook computers. PCG has filed a renewed motion to sever its case with ACCO from the other cases ACCO has filed against various other defendant companies. PCG also asks that I transfer the claims against it to the Northern District of California, where *ACCO Brands, Inc. v. PC Guardian Anti-Theft Products, Inc.*, No. 04-3526, is currently pending. I previously denied a motion by PCG to sever and transfer to the Northern District of California, ruling, in part that the interests of justice are best served by keeping all of the matters concerning the patents at issue in front of one judge.

In its renewed motion, PCG argues that circumstances have changed and key facts and legal theories have developed that render my July 2007 conclusions regarding PCG's previous motion no longer applicable. Chief among these changed circumstances, PCG posits, is the fact that it has since filed a motion for summary judgment in the case pending before Judge Illston in

the Northern District of California that the '403 and '125 patents are unenforceable for inequitable conduct.  PCG has argued to the California court that the '794 patent, at issue there, is also therefore unenforceable under the theory of "infectious unenforceability."  PCG argues that now, in order to keep all matters concerning the '403 and '125 patent before a single judge, I must transfer this case to the Northern District of California.

In further support of its motion, PCG points out that two other defendants, PSP and Datamation, have left this case subject to consent judgments, thereby reducing the risk of litigation over the patents here in separate courts.  However, there are still five other remaining defendants in this case.  If I agree to sever and transfer ACCO's case against PCG, ACCO would be required to litigate the same patent claims in two different courts, which not only wastes judicial resources but raises the risk of courts reaching inconsistent results on the same issues.

In addition, PCG argues that any concerns over efficiency during discovery and claim construction that would accompany a sever and transfer are now moot because those processes are complete.  Also, PCG contends that ACCO has asserted several additional patents against the Noble defendants, plus a fact-intensive claim for breach of a settlement agreement, which will prejudice the defense of PCG and likely confuse the jury.  I previously indicated that I would entertain future motions directed toward severing the patent infringement claims from the contract claims, and I am still open to that possibility.

Lastly, with regard to transfer,[1] PCG contends that the convenience of parties and witnesses overwhelmingly favors trial in Northern California, where all of the witnesses are located, where all of the inventors and expert witnesses reside, where Kensington (a division of ACCO that produces and sells the products based on the patents at issue) is headquartered, and from where all of the documents in this case have been produced. California was the first-filed venue in the related case, and the case there is ready to proceed to trial, if it hasn't already. Judge Illston, PCG says, is uniquely familiar with the history of patent litigation between ACCO and PCG, having also heard the original '989 case. The enforceability of the patents here are now before Judge Illston on PCG's recently filed motion for summary judgment on the issue of inequitable conduct and the corresponding theory of infectious unenforceability.

ACCO opposes PCG's motion to sever and transfer its case against PCG for several reasons. First, ACCO disputes the applicability of the theory of infectious unenforceability between the '403 and '125 patents in this case and the '794 patent at issue in the California case because the '794 patent issued *before* the patents here.[2] Second, ACCO argues that the substance and procedure of this case and the one in California differ significantly so as to make PCG's request to sever and transfer impractical. And third, ACCO presented several arguments about why transfer in particular is inappropriate in this case: Plaintiff's choice of forum is entitled to

---

[1] No one disputes that venue is proper in both this district and in the Northern District of California. Venue is proper here because ACCO's principal place of business is located in Lincolnshire, Illinois, which is within the Northern District of Illinois. ACCO has sales of its own computer security lock devices in this district; likewise PCG has sales of its allegedly infringing products here. Venue is proper in the Northern District of California because PCG's headquarters are in San Rafael, California, which is within that district.

[2] ACCO also disputes PCG's allegation of inequitable conduct. The issue is before me now in a motion for summary judgment, and a briefing schedule has been set.

substantial deference, especially when it is plaintiff's home forum; the situs of material events is largely irrelevant in patent cases as infringement is determined by comparing the accused product with the claims of the patent and is therefore not site specific; ease of air transport and document transmission via CDs and computers reduce the burden of litigating in any major metropolitan area; PCG has been litigating this case here since 2003 when it was filed; and PCG has failed to show any non-party witnesses who will not voluntarily appear in this forum.

Noble Security, Inc. ("NSI"), another defendant in the case, has also filed an opposition to PCG's motion. NSI concedes the convenience of parties and witnesses overwhelmingly favors trial in the Northern District of California. If I decide not to sever and transfer ACCO's case against PCG, NSI asks me to consider bifurcation so as to allow the issue of validity and enforceability of the patents in suit to be tried first, followed by separate trials before the same jury on the issues of infringement, willfulness, and prior settlement.

As I stated before, the interests of justice are best served by keeping all of the matters concerning the patents at issue in front of one judge. While PCG has raised the issue of inequitable conduct with regard to the '403 and '125 patents in the California case, neither of those patents are before Judge Illston on the issues of invalidity or infringement, as they are here. And, even if I were to transfer PCG's portion of this case, ACCO will still be required to litigate all of the issues against the five remaining defendants here. The California court may decide issues with regard to the validity or enforcement of the '403 and '125 patents first, and if so, then I will have the opportunity to consider those rulings before reaching my own conclusions.

There are other fundamental differences between this case and the one pending in California. The patents at issue have different claim language, and I issued a claim construction

ruling regarding the meaning of the '403 and '125 patent terms that will govern here. The respective claim construction orders here and in California include only two minor variations, but this does not factor into my ruling on transfer. I am advised the case in California is set to begin trial in early February 2009, and in this case we are still dealing with approximately eight motions for summary judgment, which are scheduled to be fully briefed by the end of February 2009. Lastly, I addressed PCG's concern over the pace of discovery with regard to the Noble defendants. While Noble's discovery has proceeded more slowly than PCG's, I recently set dates requiring discovery on all the filed motions to be completed by the end of January 2009. Given these postures, I am further disinclined to transfer a significant portion of this case to the California court.

    I do recognize that the convenience of witness factor weighs in favor of transfer, but for the foregoing reasons, PCG's renewed motion to sever and transfer venue is denied.

ENTER:

James B. Zagel
United States District Judge

DATE: December 10, 2008